UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                            :

VARUN RANA,                          :

                Petitioner,         :

           -v-                :        26 Civ. 849 (JPC)

                            :

KENNETH GENALO, *et al.*,      :       OPINION AND ORDER

                            :

               Respondents.      :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Petitioner Varun Rana[1] brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the circumstances of his detention. Because the Court concludes that Rana is lawfully detained, it denies his habeas petition.

## I. Background

### A.    Statutory and Regulatory Framework

This Court has already explained in detail that the Immigration and Nationality Act ("INA") "dictates how noncitizens are detained and ultimately removed." *Chen v. Almodovar*, No. 25 Civ. 9670 (JPC), 2026 WL 100761, at *1-5 (S.D.N.Y. Jan. 14, 2026); *see also id.* at *1 n.1 (using the terms "noncitizen and alien interchangeably" to "avoid repetition"). The INA "categorizes noncitizens based on several factors," and "detention and removal procedures depend on the type of noncitizen at issue." *Id.* at *1. Relevant here, 8 U.S.C. § 1225 concerns "applicants for admission," deeming "as 'an applicant for admission' an 'alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port

---

[1] The parties' submissions vary between calling Petitioner "Varun Rana" and "Rana Varun." The weight of the exhibits filed suggest that the former is correct. The Clerk of Court is respectfully directed to amend the caption accordingly.

of arrival . . . ).'" *Id.* at *1-2 (quoting 8 U.S.C. § 1225(a)(1)).  Section 1225(b) "divides applicants for admission into three categories, with differing detention and removal consequences attaching to each."  *Id.* at *2 (discussing applicants for admission under Section 1225(b)(1)(A)(i), Section 1225(b)(1)(A)(iii), and Section 1225(b)(2)(A)).

This case concerns the first category of applicant for admission set out in Section 1225(b): an alien "who is arriving in the United States" and that "an immigration officer determines . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title," 8 U.S.C. § 1225(b)(1)(A)(i), because that noncitizen has "by fraud or willfully misrepresent[ed] a material fact" in "seek[ing] to procure . . . admission into the United States," *id.* § 1182(a)(6)(C)(i), or because that noncitizen does not possess a required "valid entry document" at "the time of application for admission," *id.* § 1182(a)(7)(A)(i).  Such noncitizens are subject to expedited removal proceedings "unless the alien indicates" to the inspecting immigration officer "an intention to apply for asylum under section 1158 of this title or a fear of persecution," *id.* § 1225(b)(1)(A)(i), in which case "the officer shall refer the alien for an interview by an asylum officer," *id.* § 1225(b)(1)(A)(ii).  If, at that interview, the asylum officer "determines . . . that [the] alien has a credible fear of persecution," *id.* § 1225(b)(1)(B)(ii), then the asylum application will be reviewed by an immigration judge in removal proceedings under 8 U.S.C. § 1229a.  *See* 8 C.F.R. § 208.30(f) (explaining that the asylum officer will "inform the alien" that he or she has been "found to have a credible fear of persecution" and will "issue [the alien] a Form I-862, Notice to Appear, for full consideration of the asylum" application "in proceedings under [8 U.S.C. § 1229a]").  And importantly, "the alien shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  Section 1225(b)(1)(B)(ii) thus "unequivocally mandate[s] that aliens falling within [its] scope 'shall' be detained" until "immigration officers have finished 'consider[ing]' the application for asylum." *Jennings v. Rodriguez*, 583 U.S. 281, 299-300 (2018).

2

Mandatory detention under Section 1225(b)(1)(B)(ii) "does not entail a bond hearing." *Chen*, 2026 WL 100761, at *3. That is because "§ 1225(b)(1) . . . says [nothing] whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. For those falling under Section 1225(b)(1)(B)(ii) there is, instead, "a specific provision authorizing release from § 1225(b) detention." *Id.* at 300. That provision allows the Secretary of the Department of Homeland Security ("DHS") "in his discretion" to "temporarily" "parole into the United States" any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Such parole, the provision stresses, "shall not be regarded as an admission of the alien," and when the DHS Secretary determines that "the purposes of [the] parole . . . have been served[,] the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see also id.* § 1101(a)(13)(B) (explaining that an alien "paroled under section 1182(d)(5) . . . shall not be considered to have been admitted"). DHS regulations further provide that "[p]arole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii). In that case, the alien "shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i); *see id.* § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to section [1182(d)(5)(A)], and even after any such parole is terminated or revoked."). The "express" parole "exception to detention" thus "implies that there are no other circumstances under which aliens detained under § 1225(b) may be released," including on bond. *Jennings*, 583 U.S. at 300 (emphasis omitted).

Section 1226(a) covers yet another category of noncitizens, who are situated differently from their counterparts under Section 1225(b) when it comes to detention and bond hearings. Under Section 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested

3

and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole." *Id.* Unlike Section 1225(b), then, noncitizens covered by Section 1226(a) may—but not must—be detained pending removal proceedings, and may also be released from detention on bond or conditional parole.[2]  Regulations establish the procedures for bond hearings before an immigration judge, *see* 8 C.F.R. §§ 236.1, 1003.19, 1236.1, by which a noncitizen may be released "if he can convince" the immigration judge "that he poses no flight risk and no danger to the community," *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019).  *See, e.g.*, *In re Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018) (explaining that a noncitizen may be released on bond if he "establish[es]" that he "does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight").

As the Second Circuit recently summed up, "[n]oncitizens who just arrived without documentation or who misrepresented themselves are subject to expedited removal and must be detained" by way of Sections 1225(b)(1)(A)(i) and 1225(b)(1)(B)(ii), while those "who have been in the United States for more than two years get full removal proceedings, may be detained, and may be granted release on bond or conditional parole" under Section 1226(a). *Barbosa da Cunha v. Freden*, 175 F.4th 61, 85 (2d Cir. 2026).[3]

---

[2] The conditional parole contemplated by Section 1226(a) is different from the parole contemplated by Section 1182(d)(5)(A), discussed above. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 197-200 (2d Cir. 2011).

[3] The two-year threshold stems from Section 1225(b)(1)(A)(iii), under which "[n]oncitizens who snuck across the border less than two years ago may be treated the same way" as those under Section 1225(b)(1)(A)(i), "but only if so designated by the Attorney General." *Barbosa da Cunha*, 175 F.4th at 85 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)). The DHS Secretary, exercising authority delegated by the Attorney General, so designated such aliens on January 24,

**B.      Facts and Procedural History**

Rana is a citizen of India who unlawfully entered the United States without admission or inspection near the Port of Entry at Paso Del Norte in Texas on September 3, 2024.  Dkt. 1 ("Petition") ¶¶ 3, 16-17; Dkt. 8 ("Harris Decl.") ¶¶ 3-4; Dkt. 9 ("Return"), Exh. 1 ("October 2024 Form I-213") at 1-3.  That same day, he was met by an agent of the U.S. Customs and Border Protection ("CBP"), who determined that Rana did not possess any immigration documents that would allow him to enter or remain in the United States legally, and thus arrested him.  October 2024 Form I-213 at 3.  Rana was then transported for further processing to the El Paso Hardened Facility in El Paso, Texas, where CBP determined that he was inadmissible to the United States under Section 1182(a)(7)(A)(i) for being "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA]" and therefore was subject to expedited removal under Section 1225(b)(1).  *Id.*; *see* 8 U.S.C. §§ 1182(a)(7)(A)(i), 1225(b)(1)(A)(i).  CBP accordingly issued Rana a Notice and Order of Expedited Removal and a Notice to Alien Ordered Removed on September 4, 2024.  Return, Exh. 2; Harris Decl. ¶ 4.[4]

Rana, however, also claimed a fear of returning to India, so under Section 1225(b)(1)(A)(ii) he proceeded to a credible fear interview with an asylum officer.  Harris Decl. ¶ 5; *see* 8 U.S.C. § 1225(b)(1)(A)(ii).  On September 24, 2024, Rana was referred to the U.S. Citizenship and Immigration Services ("USCIS") for that credible fear interview, which was held on October 3, 2024.  Harris Decl. ¶¶ 10-11; *see* 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(i).  At that interview, the

---

2025.  *See Chen*, 2026 WL 100761, at *2 (citing Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025)).

[4] CBP also processed Rana for criminal prosecution under 8 U.S.C. § 1325(a)(1) for illegally entering the United States, to which Rana pleaded guilty in the U.S. District Court for the Western District of Texas on September 11, 2024.  Harris Decl. ¶¶ 4, 8.  Rana was sentenced to time served plus one business day.  *Id.* ¶ 8; *see* Return, Exh. 3.

asylum officer determined that Rana had a credible fear of persecution.  Harris Decl. ¶ 11.  So Rana was placed into removal proceedings to pursue an asylum application, *see* 8 C.F.R. § 208.30(f), with USCIS issuing and serving him a Notice to Appear in October 2024 that charged him as inadmissible under both Section 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General and Section 1182(a)(7)(A)(i)(I) as an alien who did not possess a valid entry document.  Harris Decl. ¶¶ 11-12; Return, Exh. 4 (October 2024 Notice to Appear) ("This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture."); 8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).  On December 9, 2024, Rana filed an affirmative asylum application with USCIS. Harris Decl. ¶ 14.

Prio to that filing, Rana had been detained by the Department of Homeland Security ("DHS") until October 10, 2024, when Immigration and Customs Enforcement ("ICE") paroled him from custody under Section 1182(d)(5)(A).  *Id.* ¶¶ 8-9, 13; *see* Return, Exh. 5 ("Interim Parole Notice") ("ICE[] has decided to parole you from its custody pursuant to its authority under section [1182](d)(5)(A) of the [INA].").  ICE's notice authorizing parole made clear that Rana's "parole authorization" was "valid for one year beginning from the date on this notice" and would "automatically terminate . . . at the end of the one-year period unless ICE provide[d] [him] with an extension at its discretion."  Interim Parole Notice; *see* 8 C.F.R. § 212.5(e)(1)(ii).  So Rana's parole automatically expired on October 10, 2025.  Return, Exh. 8 ("January 2026 Form I-213") at 2.

On January 20, 2026, Rana reported to ICE for a check-in at 26 Federal Plaza in New York City.  Petition ¶ 3; Harris Decl. ¶ 15.  At that check-in, ICE learned from record checks that Rana's parole had expired and thus took him back into custody.  Harris Decl. ¶ 15; January 2026 Form

I-213 at 2.  ICE accordingly served Rana with a Form I-200, Warrant for Arrest of Alien.  Harris Decl. ¶ 15; Return, Exh. 6 ("Arrest Warrant") (finding "probable cause to believe that Rana . . .  is removable from the United States" and commanding immigration officers "to arrest and take into custody for removal proceedings under the [INA], the above-named alien").  ICE further served Rana with a superseding Notice to Appear, identical to the one USCIS issued in October 2024, again charging Rana as inadmissible under both Section 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General and Section 1182(a)(7)(A)(i)(I) as an alien who did not possess a valid entry document.  Harris Decl. ¶ 15; Return, Exh. 7 (January 2026 Notice to Appear) ("This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.").  The next day, January 21, 2026, ICE filed the superseding Notice to Appear with the New York Immigration Court, thus placing Rana in removal proceedings, with an initial master calendar hearing scheduled for February 12, 2026.  Harris Decl. ¶¶ 16, 19.  And also on January 21, ICE transferred Rana to the Orange County Jail in Goshen, New York.  *Id.* ¶ 17.

On January 31, 2026, Rana filed his Petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Petition ¶ 13.  The Petition names as Respondents Kenneth Genalo, New York City Director of Enforcement and Removal Operations for ICE; Todd Lyons, ICE Acting Director; Kristi Noem, then-Secretary of DHS; and Pamela Bondi, then-Attorney General of the United States (together, the "Government").  *Id.* ¶¶ 20-23.[5]  According to Rana, his detention violates the

---

[5] Since the commencement of this action, Kristi Noem has been replaced as Secretary of DHS by Markwayne Mullin, https://www.dhs.gov/topics/secretary-homeland-security (lasted visited June 29, 2026), and Pamela Bondi has been replaced as Attorney General in an acting capacity by Todd Blanche, https://www.justice.gov/ag/staff-profile/meet-acting-attorney-general-0 (last visited June 29, 2026).  In accordance with Federal Rule of Civil Procedure 25(d), the Clerk of the Court is respectfully directed to substitute Markwayne Mullin, in his official capacity as

INA and its implementing regulations because the "governing regulatory scheme requires a prompt custody determination following arrest" that he did not receive. *Id.* at 14-15 (mistakenly labeled paragraphs 22-28). Rana further claims that his detention violates the Fifth Amendment of the United States Constitution because "due process requires procedures that constrain arbitrary detention and ensure that discretion is actually exercised through an individualized assessment." *Id.* at 14 (mistakenly labeled paragraph 22). Finally, Rana raises a Fourth Amendment claim because ICE purportedly arrested him without a warrant. *Id.* at 13-14 (mistakenly labeled paragraphs 19-21). As relief, Rana seeks his immediate release or, alternatively, a bond hearing. *Id.* at 20-21 (request for relief). On February 2, 2026, shortly after filing the Petition, Rana was transferred from the Orange County Jail to the Metropolitan Detention Center in Brooklyn. Harris Decl. ¶ 18.

Also on February 2, this Court ordered the Government to respond to the Petition by February 9, 2026, and Rana to reply by February 17, 2026. Dkt. 6. In its Order, this Court directed the parties to identify "any basis to distinguish this case" from its recent decision in *Chen*. *Id.* The Government filed its opposing papers on February 9 and 10, 2026. Dkts. 8-9, 10 ("Opposition"); *see* Dkts. 11-12 (requesting that the submissions filed on February 10, 2026 be deemed timely and granting that request). The Government asserts that this case is distinguishable from *Chen* because it is not "contending that Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A)" but rather Section 1225(b)(1)(B)(ii), so the case "does not present the issue that a number of judges in this District have recently considered of whether Section 1226(a) rather than Section 1225(b)(2)(A) applies to a certain category of detention." Opposition at 7-8; *see* Harris Decl. ¶ 20 (explaining that Rana "remains detained . . . pursuant to . . . 8 U.S.C. § 1225(b)(1)(B)(ii), which governs

_____

Secretary of DHS, for Kristi Noem, and Todd Blanche, in his official capacity as Acting Attorney General, for Pamela Bondi, as Respondents in the caption of this case.

detention of those aliens previously in Expedited Removal proceedings who have been found to have a positive credible fear and have been placed into removal proceeding[s] to [pursue] an asylum application with the immigration courts"). Rana did not file a reply submission.

On April 28, 2026, the Second Circuit decided *Barbosa da Cunha*, holding that Section 1226(a), rather than Section 1225(b)(2)(A), applies to noncitizens "who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 175 F.4th at 69. That same day, this Court ordered the Government to explain how the Second Circuit's decision "affects the instant case, if at all," by May 7, 2026, and allowed Rana to "respond, if necessary, by May 14, 2026." Dkt. 13.

On May 7, 2026, the Government explained that "*Barbosa da Cunha* does not control this case" because it does not "address aliens who, like Petitioner, had been apprehended at the border, subjected to expedited removal under 8 U.S.C. § 1225(b)(1), received a credible fear interview, and upon a positive credible fear finding, placed into removal proceedings, where detention authority is under 8 U.S.C. § 1225(b)(1)(B)(ii)," and further does not address those aliens who had been "released on humanitarian parole, and then later re-detained." Dkt. 14 ("Gov't Suppl. Ltr.") at 1-2. Rana, for his part, filed a belated response on May 17, 2026, which acknowledged that *Barbosa da Cunha* does not control the instant case and argued that this Court should instead consider the "post-parole" district court decisions to "hold that § 1226(a)"—rather than Section 1225(b)(1)(B)(ii)—"governs." Dkt. 16 ("Rana Response Ltr.") at 4.

Finally, on May 31, 2026, the Government reported that an immigration judge denied Rana's asylum application on April 15, 2026, and ordered him removed to India. Dkt. 17. The Government explained that "[t]his development is not material to the issues before the Court" because Rana "filed a timely appeal with the Board of Immigration Appeals [('BIA')]," and as his "removal order is not administratively final, his detention continues to be governed by the

applicable pre-removal-order statute," which the Government maintains is Section 1225(b)(1)(B)(ii). *Id.* Rana has not filed a response disputing this characterization. *See, e.g.*, *Chupina v. Holder*, 570 F. 3d 99, 103 (2d Cir. 2009) (explaining that an "order of removal is 'final' upon . . . the BIA's affirmance of the immigration judge's order of removal" (citing 8 U.S.C. § 1101(a)(47)(B)(i)); *Rashid v. Trump*, 807 F. Supp. 3d 349, 362 (D. Vt. 2025) (explaining that when an "appeal to the BIA remains pending," the statutory question does not change).

## II. Legal Standard

The writ of habeas corpus extends to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts may grant such a writ "within their respective jurisdictions." *Id.* § 2241(a). The court must "dispose of the matter as law and justice require." *Id.* § 2243. Where, as here, a petition "present[s] only issues of law," the court may adjudicate it "without a hearing." *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. Nov. 4, 2025) (quoting 28 U.S.C. § 2243).

## III. Discussion[6]

Because the Court agrees with the Government that Rana is detained under Section 1225(b)(1)(B)(ii), Rana's detention without a bond hearing violates neither the INA nor its implementing regulations. The Court further concludes that Rana's detention comports with due process and that Rana fails to establish a Fourth Amendment violation.

### A.    Rana Is Detained Under Section 1225(b)(1)(B)(ii), Not Section 1226(a).

The parties agree that when Rana first crossed the border and was detained by DHS agents, his detention was under Section 1225(b)(1)(B)(ii). *Compare* Rana Response Ltr. at 4 ("Rana was

---

[6] Because Rana filed his Petition when he was detained at the Orange County Jail, Petition ¶ 14, which is in this District, this Court has habeas jurisdiction. *See Chen*, 2026 WL 100761, at *7 n.6.

initially processed under § 1225(b)(1)."), *with* Gov't Suppl. Ltr. at 1 (explaining that Rana "had been apprehended at the border, subjected to expedited removal under 8 U.S.C. § 1225(b)(1), received a credible fear interview, and upon a positive credible fear finding, placed into removal proceedings, where detention authority is under [Section] 1225(b)(1)(B)(ii)"), *and* Opposition at 6-7 (similar). That agreement logically flows from the plain language of Section 1225(b)(1), under which an alien (1) "who is arriving in the United States," (2) is determined to be "inadmissible under section . . . 1182(a)(7)," (3) "indicates . . . a fear of persecution," and (4) is then found to have "a credible fear of persecution" "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(A)(i), (B)(ii). Rana's initial detention indisputably met those prerequisites. *See supra* I.B.

The parties disagree, however, on the legal effect of Rana's parole. According to Rana, his "current custody, after parole and later interior re-detention," no longer "remains within § 1225(b)(1)." Rana Response Ltr. at 5-6. The Government, for its part, argues that under "Congress's parole framework," Rana's "release[] on parole after his [initial 2024] arrest" leaves his immigration status under Section 1225(b)(1)(B)(ii) "unchanged." Opposition at 9-10 & n.5; *accord* Gov't Suppl. Ltr. at 2 (arguing that after Rana was "released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A)" and "re-detained," his "detention remained governed by § 1225(b)(1)(B)(ii)"). While "[t]here is a lack of consensus among courts regarding whether a petitioner's earlier parole into the United States negates the Government's detention authority under § 1225(b)(1)," *Golloo v. Akshar*, No. 9:26-cv-401 (MAD), 2026 WL 1110266, at *3 (N.D.N.Y. Apr. 24, 2026), the Government has the better reading of the INA.

As "a matter of statutory construction," an "expired parolee's status reverts to what it was before he was granted parole," meaning that in cases like this one the "expiration of parole" causes the alien's "status to 'snap back' to where it was before he was paroled, *i.e.*, to § 1225(b)(1)." *Ajay*

*v. Maldonado*, No. 26 Civ. 676 (BMC), 2026 WL 1045420, at *1 (E.D.N.Y. Apr. 17, 2026).  Recall that Section 1182(d)(5)(A) establishes that once parole expires, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).  This "snap-back" provision's "reference to 'return[ing the parolee] to the custody from which he was paroled'" thus "requires . . . look[ing] back to why [the parolee] was detained in the first place" and then "plac[ing] him there."  *Ajay*, 2026 WL 1045420, at *2-3.  Courts across the country have accordingly found that under the "plain language" of Section 1182(d)(5)(A), a "noncitizen detained by DHS upon revocation of his parole return[s] to his previous status under § 1225." *Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *3-4 (D.N.M. Apr. 4, 2026); *accord Abreu v. Crawford*, No. 1:24-cv-01782-MSN-WBP, 2025 WL 51475, at *4 (E.D. Va. Jan. 8, 2025) ("This Court recognizes that [the petitioner] was initially detained pursuant to § 1225 and that his subsequent parole did not change his status."); *see, e.g.*, *Brito-Goncalvez v. Field Off. Dir., Detroit Field Off., ICE*, No. 1:26-cv-94, 2026 WL 1077448, at *2-3 (S.D. Ohio Apr. 21, 2026) (similar); *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026) (similar); *Lin v. Almodovar*, No. 25 Civ. 9639 (MKV), 2025 WL 3706626, at *2-3 (S.D.N.Y. Dec. 22, 2025) (similar); *Valera-Marin v. Lyons*, No. 2:25-cv-00914-KG-GBW, 2025 WL 3687978, at *3 (D.N.M. Dec. 19, 2025) (similar); *Rincon v. Hyde*, 810 F. Supp. 3d 101, 109 (D. Mass. 2025) (similar); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (similar).  So when Rana's parole expired on October 10, 2025, his detention status reverted back to what it was at the time he had been paroled the year before—dictated by Section 1225(b)(1)(B)(ii).  "And under that provision, the government has authority to, [and] indeed is required to, detain" him until his asylum application is resolved.  *Brito-Goncalvez*, 2026 WL 1077448, at *3.  That is what happened here.

12

Second Circuit precedent and the INA's regulatory framework confirm this conclusion. As the Second Circuit has explained, "[a]fter the purpose of the parole has been served, the alien's status reverts to that which he had at the time he was inspected and paroled into the country." *Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007); *accord United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019) ("Parole does not change parolees' immigration status[.]"). Plus, "[t]he INA's implementing regulations regarding parole confirm that th[e] same [detention] provision applies after . . . parole expires." *Mendibaev*, 2026 WL 917457, at *4. For example, the regulation covering parole procedures makes clear that once parole is terminated, the alien "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). And the BIA has similarly concluded that "an alien detained under section [1225(b)] who is released from detention pursuant to a grant of parole under section [1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under section [1225(b)] pending the completion of removal proceedings." *In re Q. Li*, 29 I. & N. Dec. 66, 69-71 (BIA 2025) (citing 8 C.F.R. § 212.5(e)(2)(i)); *see Rincon*, 810 F. Supp. 3d at 109 n.9 (relying on *Q. Li* as "helpful guidance" (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024)).

To be sure, Rana points to two district court cases reaching a different conclusion. Rana Response Ltr. at 4-5 (citing *Qasemi v. Francis*, No. 25 Civ. 10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), and *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y. 2025)).[7] Those cases, among others, have accepted arguments like Rana's that he is "not now

---

[7] Three cases which Rana cites are plainly inapposite, *see* Rana Response Ltr. at 4-5, as they involved aliens released on bond under Section 1226(a) rather than parole under Section 1182(d)(5)(A). *See Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 383-85 (S.D.N.Y. 2026); *M.K. v. Arteta*, No. 25 Civ. 9918 (LAK), 2025 WL 3720779, at *7 (S.D.N.Y. Dec. 23, 2025); *Quinteros Moran v. Joyce*, No. 25 Civ. 9645 (GBD), 2025 WL 3632895, at *1 (S.D.N.Y. Dec. 15, 2025). Indeed, the court in *M.K.* observed that had DHS paroled the petitioner under Section 1182(d)(5)(A), it "might be a different case," because Section 1226(a) lacks "analogous language" to Section 1182(d)(5)(A) directing the Government to treat aliens according to their status pre-

arriving in the United States," and thus cannot meet Section 1225(b)(1)(B)(ii)'s "gateway requirement[]" that he be "arriving in the United States." *Id.* at 4 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)); *see Qasemi*, 2025 WL 3654098, at *6-7 (defining "someone arriving in the United States" as "someone who has reached the border or a port of entry" and holding that under the "plain meaning of the phrase" the petitioner "had arrived in the United States" upon "his parole into the interior of the country . . . and was no longer a noncitizen arriving in the United States"); *Rodriguez-Acurio*, 811 F. Supp. 3d at 305-08 (similar).  But that argument misses the forest for the trees: it fails to account for Section 1182(d)(5)(A)'s role in "revert[ing]" an alien's "status . . . to that which he had at the time he was inspected and paroled into the country." *Ibragimov*, 476 F.3d at 132.  And any statute, of course, must be interpreted with an "eye" to "considerations evidenced in affiliated statutes."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) (internal quotation marks omitted); *see Jennings*, 583 U.S. at 300 (describing Section 1182(d)(5)(A) as the "specific provision authorizing release from § 1225(b) detention").

Nor is the Court persuaded by those cases' interpretation of Section 1182(d)(5)(A) to mean that "rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal," *Rodriguez-Acurio*, 811 F. Supp. 3d at 302-03, which conflicts with the Second Circuit's characterization of the provision and the provision's plain text. *Compare id.*, *and Qasemi*, 2025 WL 3654098, at *9-11, *with Ibragimov*, 476 F.3d at 132 ("After the purpose of the parole has been served, the alien's status reverts to that which he had at the time he was inspected and paroled into the country.").  Section 1182(d)(5)(A) "does not bring [a] petitioner

---

parole.  2025 WL 3720779, at *8.

back to the status of some amorphous class of aliens.  Rather, the statute specifically refers to the '*custody* from which *he* was paroled.'  This language requires [courts] to look specifically at whence [the] petitioner came—in this case, § 1225(b)(1)—and to place him there."  *Ajay*, 2026 WL 1045420, at *3 (quoting 8 U.S.C. § 1182(d)(5)(A)).  The custody from which Rana had been paroled was detention under Section 1225(b)(1)(B)(ii), so upon the expiration of his parole Congress specified that he "be returned" there.  8 U.S.C. § 1182(d)(5)(A).

Because Rana is detained under Section 1225(b)(1)(B)(ii), which does not provide for a bond hearing, the Government has violated neither the INA nor that statute's implementing regulations by declining to afford him one.

**B.    Rana's Detention Satisfies Due Process.**

While Rana's due process claim is hazy, he appears to argue that "[d]etention that is automatic, categorical, or justified solely by immigration status or manner of entry, without any individualized assessment or opportunity to be heard, offends due process."  Petition ¶ 33; *accord* Rana Response Ltr. at 8-9.  But the Second Circuit has rejected such a broad argument.  "Detention during removal proceedings is a constitutionally valid aspect of the deportation process."  *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020); *accord Demore v. Kim*, 538 U.S. 510, 523, 531 (2003).  For this reason, the Second Circuit has recognized that "due process does not require an *initial* bond determination for those detained under section 1226(c)," a provision mandating detention pending immigration proceedings just like Section 1225(b)(1)(B)(ii).  *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024), *cert. granted*, No. 25-886, 2026 WL 1718025, at *1 (U.S. June 15, 2026).  If "the government may detain noncitizens under section 1226(c) without an initial bond determination," *id.*, then the same is true here.  Indeed, that conclusion rings even stronger given Rana's prior parole.  *See Palma v. Arteta*, 823 F. Supp. 3d 311, 319-29 (S.D.N.Y. 2026) (explaining that "a paroled alien is treated as if stopped at the border, and an alien stopped at the

border may be denied certain due process rights regardless of whether he is later allowed to come inside the country," so "the Government's interest in not providing a non-entered alien with a bond hearing trumps the alien's right to such a hearing" (internal quotation marks omitted)).

Ultimately, "at the time [Rana] filed his petition, his detention without a bond hearing did not violate due process." *Sheriff v. Catletti*, No. 26 Civ. 1092 (GHW), 2026 WL 1298174, at *5 (S.D.N.Y. May 12, 2026).  And even assuming *arguendo* that Rana could eventually raise a due process challenge to his detention as "unreasonably prolonged," *Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 809 F. Supp. 3d 135, 140 (S.D.N.Y. 2025), he "did not raise this ground in his habeas petition," though he "is free to raise" it "in a separate habeas petition should he wish to do so," *Sheriff*, 2026 WL 1298174, at *5 n.6.  *But see Palma*, 823 F. Supp. 3d at 322 ("[P]roper interest-balancing permits the Government to detain any non-entered alien without bond for a prolonged period.").   So the Court rejects Rana's due process claim.

## C.    Rana's Arrest Does Not Violate The Fourth Amendment.

Finally, Rana claims that he was arrested without a warrant in violation of the Fourth Amendment.  Petition at 13-14.  But the Government has produced an arrest warrant which ICE served on Rana when it took him into custody.  *See* Arrest Warrant; Harris Decl. ¶ 15.  Rana purports to "preserve[] his factual and legal objection that officers did not present him with a warrant at the time of arrest" but fails entirely to respond to the warrant produced in the Government's Return.  Rana Response Ltr. at 8.  That "failure to respond is sufficient to forfeit [his] argument" of a warrantless arrest.  *Paige v. City of New York*, No. 21 Civ. 11104 (JGK), 2023 WL 3122989, at *2 (S.D.N.Y. Apr. 27, 2023); *accord Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").  So the Court rejects Rana's Fourth Amendment claim, too.

16

## IV. Conclusion

For the above reasons, Rana's Petition for a writ of habeas corpus is denied. The Clerk of Court is respectfully directed to amend the caption to list Petitioner's name as "Varun Rana," and to substitute Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security, for Kristi Noem, and Todd Blanche, in his official capacity as Acting Attorney General, for Pamela Bondi, as Respondents. The Clerk of Court also is respectfully directed to enter judgment in Respondents' favor and to close this case.

SO ORDERED.

Dated:  June 29, 2026
        New York, New York

_____
JOHN P. CRONAN
United States District Judge

17